Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| ISA MARY MOYA GALÁN RECURRIDA v. COOPERATIVA DE AHORRO Y CRÉDITO HATILLO PETICIONARIO | KLCE202500529 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Hatillo Caso Núm. HA2021CV00157 Sobre: Discrimen y Represalia |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente.

# **RESOLUCIÓN**

En San Juan, Puerto Rico, a 27 de mayo de 2025.

## **I.**

El 15 de mayo de 2025, la Cooperativa de Ahorro y Crédito Hatillo presentó una *Petición de Certiorari* en la que solicitó que expidamos el auto de *certiorari* y revoquemos la determinación del Tribunal de Primera Instancia, Sala Superior de Hatillo (TPI o foro primario) emitida el 1 de mayo de 2025 y notificada digitalmente el 5 de mayo de 2025. En la misma, declaró No Ha Lugar la *Solicitud de Sentencia Sumaria* radicada por la parte peticionaria puesto que aún existen hechos en controversia.[1]

Como cuestión de umbral, debemos mencionar que la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7 (B) (5), confiere a este foro la facultad para prescindir de escritos, en cualquier caso, ante su consideración, con el propósito de lograr su más justo y eficiente despacho. Dadas las

---

[1] Apéndice de la Petición de *Certiorari*, Anejo 5, págs. 367-377.

Número Identificador
RES2025_____

particularidades de este caso, prescindimos de la comparecencia de la parte recurrida.

**II.**

El caso de marras tuvo su génesis el 17 de agosto de 2021, cuando la señora Isa Mary Moya Galán (la señora Moya Galán o la recurrente) presentó una *Querella* por discrimen laboral conforme el procedimiento sumario de reclamaciones laborales establecido en la *Ley de Procedimiento Sumario de Reclamaciones Laborales*, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118, *et. seq*, (Ley Núm. 2-1961).[2] Surge de la referida *Querella* que, en marzo de 1992 la señora Moya Galán comenzó a laborar en la Cooperativa de Ahorro y Crédito Hatillo (la Cooperativa o parte peticionaria). Empero, desde el 2009 hasta el presente comenzó a sufrir varias condiciones de salud, entre ellas depresión y ansiedad, las cuales le afectaban su sistema nervioso. Ante ello, la señora Moya Galán solicitó varios tipos de acomodos razonables ante su supervisor para continuar completando sus labores a cabalidad. No obstante, alegó que la Cooperativa no realizó ningún tipo de acomodo y que fue sujeta a varios actos discriminatorios, entre ellos aumentarle la carga de trabajo y varias represalias ante las deficiencias en su trabajo provocadas por su condición de salud. A su vez, la recurrida arguyó que fue amenazada con ser despedida tras acudir a las facilidades de la Administración de Seguridad y Salud Ocupacional (OSHA) en la que testificó acerca del discrimen alegadamente ocasionado por la parte peticionaria. Por ende, reclamó una compensación por sufrimientos y angustias mentales por la cuantía de doscientos cincuenta mil dólares ($250,000.00), la imposición de doble penalidad y el pago de costas y honorarios de abogados.

---

[2] Íd., Anejo 1, págs. 1-7.

El 27 de agosto de 2021, la parte peticionaria presentó la *Contestación a la Querella* en la que negó las alegaciones de la señora Moya Galán. Asimismo, alegó que la recurrida no completó un formulario titulado *"Procedimiento y Conceder Acomodo Razonable"* por lo que desconocía sobre los padecimientos de salud que sufría la señora Moya Galán y, por consiguiente, los acomodos que esta requería.[3]

Simultáneamente, la parte peticionaria radicó *Solicitud de Conversión de procedimiento sumario a ordinario* en la que solicitó la conversión del procedimiento del caso de sumario a ordinario para en aras de llevar a cabo el descubrimiento de prueba.[4]

El 17 de septiembre de 2021, el TPI emitió y notificó una *Minuta- Resolución* en la que resolvió que, en atención a la *Solicitud de Procedimiento Sumario a Ordinario* presentada por la parte peticionaria, el caso se mantendría bajo el procedimiento sumario.[5]

Tras varios incidentes procesales, el 5 de abril de 2024 la parte peticionaria presentó la *Solicitud de Sentencia Sumaria* en la que argumentó que procede la desestimación del caso puesto que la señora Moya Galán no cumplió con la normativa de la Cooperativa para obtener los acomodos razonables solicitados.[6] Además, aludió que las alegaciones de la recurrida no estaban fundamentadas con prueba documental. A su vez, indicó que la señora Moya Galán no era una persona impedida conforme los requisitos estatutarios establecidos.

Luego, el 16 de julio de 2025, la señora Moya Galán radicó *Oposición a Moción de Sentencia Sumaria* en la que alegó que existían hechos en controversia que impedían que se emitiera una *Sentencia*

---

[3] Íd., Anejo 2, págs. 8-36.
[4] Véase la Anotación Judicial Núm. 5 del expediente digital del caso en el Sistema Unificado de Manejo de Caso (SUMAC).
[5] Véase la Anotación Judicial Núm. 12 del expediente digital del caso en SUMAC.
[6] Apéndice de la Petición de *Certiorari*, Anejo 3, págs. 37-245.

*Sumaria.*[7] A su vez, arguyó que los alegados hechos incontrovertidos fueron basados en una declaración jurada, de su supervisor, que contenía alegaciones falsas. Asimismo, las condiciones laborales creadas por la Cooperativa afectaron su desempeño laboral. Además, alegó que aún persistía en controversia las acciones discriminatorias perpetuadas por la Cooperativa en contra de la recurrida. Por ende, solicitó que no procediera la *Moción de Sentencia Sumaria* presentada por la recurrida.

El 1 de mayo de 2025, notificada digitalmente el 5 de mayo de 2025, el TPI emitió una *Resolución*[8] en la que consignó las siguientes determinaciones de hecho:

> 1. Haticoop es una entidad sin fines de lucro organizada y registrada a hacer negocios en Puerto Rico bajo las leyes del Estado Libre Asociado de Puerto Rico y la Ley Especial de Cooperativas de Ahorro y Crédito, Ley Núm. 255 de 28 de octubre de 2002, según enmendada. La entidad tiene un número de registro en el Departamento de Estado que corresponde al 195. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, y; "Oposición a moción de sentencia sumaria" [49], II. Hechos materiales en controversia.
> 2. Haticoop tiene en su Manual de Empleado su política sobre Igualdad de Oportunidades de empleo a todo el personal cualificado sin distinción de raza, color, religión, edad, sexo, origen, condición social, ideas políticas, origen nacional, impedimentos físicos y/o mentales, condición de veterano de Vietnam o veterano incapacitado. Esta política cubre todos los aspectos relacionados al empleo incluyendo el reclutamiento, selección, adiestramientos, promoción, traslados compensación administración de beneficios y demás condiciones privilegios y oportunidades en el empleo. Id.
> 3. Asimismo, Haticoop posee una clara política de prohibición en contra de las represalias por haber presentado una querella. Id.
> 4. El Sr. Gerena, por razón de su posición como pasado Presidente Ejecutivo de Haticoop, tuvo a su cargo y custodia el expediente que contiene el historial de empleo de la querellante, los deberes y funciones que tenía con Haticoop, así como los adiestramientos, políticas, manuales y amonestaciones que recibió por parte de la Cooperativa. Id.
> 5. La Sra. Moya hizo una práctica en Haticoop en el 1990 y luego empezó a trabajar desde marzo de 1992 en el puesto de archivo, luego fue recepcionista y de ahí continuó escalando. Id.
> 6. Al día de la deposición, la querellante ocupaba el puesto de Gerente de préstamos y servicios devengando un salario de $18.40 la hora. Id.
> 7. La querellante admitió que en la Cooperativa existe y ella conoce el Manual de Personal, el Reglamento de Recursos Humanos, las Políticas de Discrimen y Código de Ética. Id.

---

[7] Íd., Anejo 4, págs. 246-366.
[8] Íd., Anejo 5, págs. 367-377.

8. La querellante tomó capacitación de todas las políticas y reglamentos que estaban vigentes para la fecha en que realizó las alegaciones de su querella. Id.

9. Desde el 2018, la Sra. Moya era supervisada por el Sr. José Martínez Lugo, quien ocupaba el puesto de Director de Operaciones, y también la supervisaba el Sr. Gerena, quien ocupaba el puesto de Presidente Ejecutivo. Id.

10. Al día de la deposición, la querellante no estaba acogida al Fondo del seguro del estado. Id.

11. La Sra. Moya sostuvo que el estrés que siente es variado, como las olas del mar que va y viene. La querellante declaró que lleva en ese sentir como hace cinco o seis años, y que todo seguía más o menos igual. Id.

12. El Sr. Gerena nunca le disminuyó el salario a la Sra. Moya. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #14.

13.Los puestos vacantes en la Cooperativa no todos eran bajo la supervisión de la querellante. Es decir, en otras áreas de la Cooperativa también habían puestos vacantes. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, y; "Oposición a moción de sentencia sumaria" [49], II. Hechos materiales en controversia.

14. Que como gerencial (empleada exenta), la querellante debía brindar apoyo a los empleados del departamento en aras de cumplir con las metas organizacionales. Id.

15. La Sra. Moya desde el 2009 comenzó a recibir tratamiento psicológico, luego en el 2014 recibió también tratamiento psiquiátrico y requirió de una hospitalización. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #31.

16. El Sr. Gerena nunca le prohibió a la querellante acudir a sus citas médicas. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, y; "Oposición a moción de sentencia sumaria" [49], II. Hechos materiales en controversia.

17. La Cooperativa en más de una ocasión concedió diversas solicitudes de la querellante para atender las situaciones que está presentaba, entre otras instancias, la Sra. Moya se acogió a diversas licencias para atender sus situaciones de salud y estuvo reportada en varias ocasiones al Fondo. Id.

18. La querellante reconoció la certificación y recibo de entrega de políticas, manuales y reglamentos institucionales con fecha de 1 de junio de 2017 y el acuse de recibo con fecha de 5 de marzo de 2020. Id.

19. El Sr. Martínez le dio una disciplina progresiva a la querellante, siendo la misma una amonestación escrita. Luego, el Sr. Martínez cursó otra carta a la querellante contestando una misiva enviada por esta. Id.

20. Dicha amonestación fue por deficiencia en la supervisión de su personal ya que no informó oportunamente a los empleados a su cargo sobre el cambio de fecha de una reunión de comité de crédito la cual se iba a llevar a cabo el martes 13 de marzo de 2018 cuando dicha información fue debidamente notificada por el Director de Operaciones desde el 9 de marzo de 2018 y se le dio seguimiento el 12 de marzo de 2018; dicho incumplimiento provocó que no estuvieran los casos listos para la referida reunión. Id.

21. La querellante fue amonestada por fallar en sus deberes de supervisión en el caso del socio número 13256 ya que una de sus empleadas entregó el caso directamente al comité de crédito sin consultarlo con la gerencia antes conforme a los procedimientos internos. La querellante trató de refutar la amonestación antes reseñada el 23 de marzo de 2018, sin embargo, el 26 de marzo de 2018 la querellada le contestó la

misiva disponiendo que la amonestación procedía y se iba a mantener en su expediente de personal. Id.

22. Que la querellante, debido a esta amonestación, se reportó a la Corporación del Fondo del Seguro del Estado ("Fondo") alegando que "a raíz del recibo de la acción disciplinaria se había agravado su condición emocional y debido a la ansiedad tiene dolores musculares en hombro y cuello". El Fondo resolvió que la condición emocional no estaba relacionada al empleo y ordenó el cierre de la reclamación. Id.[9]

Asimismo, formuló que los siguientes hechos que están en controversia:

1. La Sra. Moya indicó que podía realizar las funciones esenciales de su puesto. Es decir, reconoció que no tenía impedimento alguno de hacer sus funciones esenciales debido a alguna condición médica. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #10.

2. La Sra. Moya indicó que a la Sra. Dianeth Ramos, Presidente Ejecutiva Interina, quien está en dicho puesto desde abril 2023, nunca le ha solicitado un acomodo razonable. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #11.

3. Al día de la deposición, a la querellante no le consta si era la única persona a la cual presuntamente el Sr. Gerena no invitaba a reuniones. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #15.

4. En relación con que la querellante quería un cambio de posición, ésta reconoció que al día de la deposición ocupaba el mismo puesto y, que de cambiar de puesto, ello requería cambiar sus deberes y funciones. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #16.

5. El Sr. Gerena no le dijo a la querellante "si tienen una querella en mi contra no se la lleven a la junta". Es decir, el Sr. Gerena nunca le prohibió a la querellante acudir a la Junta de Directores para quejarse de éste. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #17.

6. A la querellante no le consta las determinaciones de la Junta de Directores sobre las contrataciones de las vacantes existentes en la Cooperativa. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #18.

7. El Sr. Gerena no le impartió medidas disciplinarias a la Sra. Moya que consten en el expediente de personal. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #20.

8. La querellante no le solicitó a la Cooperativa acomodo razonable de manera formal, por escrito y de conformidad con las políticas internas de la empresa. En cualquier caso, la Sra. Maribel Gerena, Directora de HR, era y es, a tenor con las normas de la Cooperativa, la encargada de tramitar las solicitudes de acomodo razonable y esta debía sostener una reunión con este servidor para la aprobación y/o determinación final sobre la aprobación o denegación de la solicitud; esto luego de que se llevara a cabo un proceso interactivo y de buena fe con el empleado, según los requerimientos establecidos por las leyes y reglamentos vigentes y aplicables a la Cooperativa. Véase, "Solicitud de

---

[9] Íd., Anejo 5, págs. 369-370.

sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #21.

9. Que la querellante no cumplimentó el formulario adoptado por la Cooperativa para solicitar acomodo razonable el cual es provisto por el departamento de Recursos Humanos de conformidad con el "Procedimiento para Solicitar y Conceder Acomodo Razonable" el cual es de aplicación para todos los empleados. La política dispone que "el empleado es responsable de dejar saber a la Cooperativa que es necesario que se le provea un acomodo razonable para poder participar en el proceso de solicitud de empleo, o para realizar las funciones esenciales del puesto". Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #22.

10. Cuando la Sra. Moya alega que le denegaron su solicitud y le asignaron deberes y funciones clericales quiere decir que ejercía las funciones de los puestos que estaban vacantes bajo su supervisión. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #23.

11. Cuando la Sra. Moya alega que no habían reemplazado las personas que le asistían y le proveía apoyo en la realización de sus deberes y funciones aumentándole drásticamente la carga de trabajo se refiere al trabajo de los puestos vacantes. Antes la querellante le delegaba esas funciones a la persona que ocupase el puesto, pero, en ese momento, no había a quién delegar. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #24.

12. En Haticoop no existe un acomodo razonable por "sobrecarga de trabajo". Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #25.

13. La Sra. Moya testificó en OSHA en febrero 2020 y febrero 2021. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #27.

14. La Sra. Moya presentó al Sr. Gerena y al Sr. Martínez su solicitud para que se llenaran las plazas vacantes desde el 2018, 2019, 2020 y 2021 y las mismas no se llenaron. Es decir, previo a su testimonio en OSHA ya la querellante había realizado dichas solicitudes. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #28.

15. En aras de salvaguardar la imparcialidad de los procesos, la Cooperativa asignó a un contratista independiente, asesor del área de cobros, para efectos de coordinar los aspectos relacionados a una investigación que se estaba realizando por parte de personal de la OSHA. A esos fines, se llevó a cabo una reunión con todo el personal para explicarles el procedimiento de entrevista que se estaría realizando y les orientó que debían contestar todo lo que se le preguntara. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #29.

16. La querellante admitió sobre su alegación de que intentaron prohibir que testificara en OSHA que el abogado Luis López nunca dijo "Isa Mary te vamos a excusar a ti por tus condiciones de salud", por lo que reconoció que ella solo percibió que era hacia ella lo presuntamente dicho por el licenciado López. Véase, "Solicitud de sentencia sumaria" [42], IV. Hechos materiales que no están en controversia, #30.[10]

---

[10] Íd., Anejo 5, págs. 371-372.

El foro primario resolvió que existía controversia de hechos en torno a la credibilidad de los testimonios presentados por la parte peticionaria. Incluso, razonó que no procedía el mecanismo de sentencia sumaria toda vez que había controversias sobre las alegaciones de discrimen incoadas por la señora Moya Galán y el alegado incumplimiento por parte de esta en solicitar el acomodo razonable conforme las normas institucionales. Consecuentemente, el TPI decretó No Ha Lugar la *Solicitud de Sentencia Sumaria* presentada por la parte peticionaria y ordenó la continuación de los procedimientos.

Inconforme con la determinación, la Cooperativa recurre ante este tribunal e imputó los siguientes señalamientos de error:

> Primer error: Erró el Tribunal de Primera Instancia al denegar la solicitud de sentencia sumaria incoada aun cuando estimó que existían veintidós (22) hechos fuera de controversia en la Resolución emitida las cuales comprueban la falta de validez de los reclamos incoados sobre discrimen y represalias.
> Segundo error: Erró el Tribunal de Primera Instancia al crear controversias de hechos por contradicciones realizadas por la propia querellante como fundamento para denegar la solicitud de sentencia sumaria de la querellada, a pesar de que la evidencia y las admisiones de la Sra. Moya sustentan nuestra posición.
> Tercer error: Erró el Tribunal de Primera Instancia al no considerar las admisiones efectuadas por la querellante en su deposición, establecidos como hechos no controvertidos en la solicitud de sentencia sumaria, para fines de adjudicar el reclamo.

En apretada síntesis, la parte peticionaria razonó que debemos expedir el auto de *certiorari* toda vez que la prueba documental presentada por la parte peticionaria en la *Solicitud de Sentencia Sumaria* arroja a que no existe controversia de hechos. Subsiguiente, solicitó que esta Curia revisara *de novo* la *Solicitud de Sentencia Sumaria* y su oposición debido a que el análisis del TPI estuvo errado ante la improcedencia de los reclamos en contra de la Cooperativa.

**III.**

**A.**

El auto de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeill Healthcare LLC,*** 194 DPR 723, 728 (2016). Es en esencia un recurso extraordinario por el cual se solicita a un tribunal de mayor jerarquía la corrección de un error cometido por el tribunal inferior. supra, pág. 729. Una característica distintiva del auto de *certiorari* es que se asienta en la discreción delegada al tribunal revisor para autorizar su expedición y adjudicación. ***IG Builders et al. v. BBVAPR***, 185 DPR 307, 338 (2012). No obstante, nuestra discreción debe ejercerse de manera razonable, y siempre procurar lograr una solución justa. ***Torres Martínez v. Torres Ghigliotty***, 175 DPR 83, 98 (2008).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece las instancias en las que el foro revisor posee autoridad para expedir el auto de *certiorari* sobre materia civil.[11] ***Scotiabank de Puerto Rico v. ZAF Corporation, et als.***, 202 DPR 478 (2019). A su vez, dicha regla sufrió varios cambios fundamentales encaminados a evitar la revisión judicial de aquellas órdenes o

---

[11] Esta Regla dispone que:

[....]

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

resoluciones que dilataban innecesariamente el proceso pues pueden esperar a ser revisadas una vez culminado el mismo, uniendo su revisión al recurso de apelación. ***Medina Nazario v. McNeill Healthcare LLC,*** *supra.* En esa línea, el rol de este foro al atender recursos de *certiorari* descansa en la premisa de que es el foro de instancia quien está en mejor posición para resolver controversias interlocutorias y con el cuidado que debemos ejercer para no interrumpir injustificadamente el curso ordinario de los pleitos que se están ventilando en ese foro. ***Torres Martínez v. Torres Ghigliotty***, supra.

Si el asunto comprendido en el recurso de *certiorari* está en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, entonces este foro ejerce un segundo escrutinio. Este se particulariza por la discreción que se le ha sido conferida al Tribunal de Apelaciones para expedir, autorizar y adjudicar en sus méritos el caso. Para poder ejercer de manera razonable y prudente la facultad discrecional concedida, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40, establece los criterios que debemos tener ante nuestra consideración al atender una solicitud de expedición de un auto de *certiorari*.[12]

**B.**

La Ley Núm. 2-1961, *supra*, tiene como propósito principal proveerle al obrero un mecanismo procesal expedito que facilite y

---

[12] Esta Regla dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

acelere el trámite de sus reclamaciones laborales. ***Rivera v. Insular Wire Products Corp.***, 140 DPR 912, 928 (1996). El procedimiento sumario "es el recurso principal 'para la implantación de la política pública del Estado de proteger el empleo, desalentando el despido sin justa causa y proveyendo al obrero así despedido los medios económicos para la subsistencia de éste y de su familia, en la etapa de transición entre empleos'". ***Medina Nazario v. McNeil Healthcare LLC***, supra, pág. 732 (citando a ***Rivera v. Insular Wire Products***, supra, pág. 923). Véase, además, ***Izagas Santos v. Family Drug Center***, 182 DPR 463, 480 (2011). A su vez, el Tribunal Supremo ha expresado que la Ley Núm. 2, *supra*, provee un procedimiento expedito para lograr los propósitos de proteger el empleo, desalentar el despido sin justa causa y proveerle al empleado despedido los remedios económicos para su subsistencia mientras obtiene un nuevo empleo. ***Ocasio* v. *Kelly Servs,* et al,** 163 DPR 653, 666 (2005).

El artículo tres (3) de la Ley Núm. 2-1961, *supra* sec. 3120, establece que el secretario del tribunal notificará a la parte querellada con copia de la querella que debe responder dentro de diez (10) días a partir de la notificación, si la querella es dentro del distrito judicial o quince (15) días si la misma es fuera del distrito judicial de la acción en su contra constatando haber servido copia de esta al abogado de la parte querellante o a ésta si hubiere comparecido por derecho propio. Consecuentemente, de no responder dentro del término establecido se dictará sentencia en su contra, concediendo el remedio solicitado y sin más citarle ni oírle. Íd. Ley Núm. 2-1961, *supra* sec. 3121. En esa línea, "si el querellado radicara su contestación a la querella en la forma y en el término dispuestos en la Sección 3 de esta Ley, el juicio se celebrará sin sujeción a calendario a instancias del querellante, previa

notificación al querellado." Íd. Ahora bien, una vez emitida una Sentencia por el TPI, cualquiera de las partes perjudicadas, podrá comparecer ante el Tribunal de Apelaciones, en el término de diez (10) días jurisdiccionales, computados a partir de la notificación de la Sentencia del TPI. Ley Núm. 2-1961, *supra* sec. 3121.

El Tribunal Supremo resolvió que a revisión de resoluciones interlocutorias dictadas durante un procedimiento sumario al amparo de la Ley Núm. 2, *supra*, desvirtúa el carácter sumario de dicho procedimiento. *Dávila Rivera v. Antilles Shipping, Inc.*, 147 DPR 483, 494 (1999).

Sin embargo, esta norma no es absoluta, puesto que el Tribunal reconoció que hay instancias en las que una resolución pudiese revisarse interlocutoriamente. La intervención se justificará cuando: (1) el foro primario haya actuado sin jurisdicción; (2) en situaciones en las que la revisión inmediata dispone del caso por completo; y (3) cuando la revisión tenga el efecto de evitar una grave injusticia. *Díaz Santiago v. Pontificia Universidad Católica de Puerto Rico*, 207 DPR 339, 349 (2021).

**IV.**

En el recurso de marras, la parte peticionaria impugna una *Resolución interlocutoria* en la que el TPI resolvió que no procede *la Solicitud de Sentencia Sumaria* presentada por la Cooperativa puesto que existían hechos en controversia en cuanto al alegado discrimen sufrido por la señora Moya Galán y el supuesto incumplimiento por la recurrida en no solicitar los acomodos razonables conforme la normativa de la Cooperativa. A su vez, el foro primario resolvió que procedía la continuación de los procedimientos.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, a la luz de los criterios esbozados en la Regla 52.1 de Procedimiento Civil, supra, y en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, y la

normativa expuesta en ***Medina Nazario v. McNeil Healthcare, LLC***, supra. págs. 732-733, ***Dávila Rivera v. Antilles Shipping Inc.***, supra, y ***Díaz Santiago v. Pontificia Universidad Católica***, supra, resolvemos que debemos abstenernos de ejercer nuestra función revisora y desestimar el presente recurso. Un examen sosegado del expediente del caso ante nuestra consideración y de la determinación recurrida, nos impide intervenir en la determinación del TPI. Ello, obedece a que no se configuraron los requisitos establecidos para intervenir en una resolución interlocutoria emitida por el TPI en un caso presentado bajo la Ley Núm. 2-1971, *supra*. Adviértase, el presente caso se tramita conforme el **procedimiento sumario** establecido en la Ley Núm. 2-1971, *supra*, y se recurre de una determinación interlocutoria. No existe ninguna de las excepciones para nuestra intervención, en esta etapa de los procedimientos.

**V.**

Por los fundamentos pormenorizados, denegamos expedir el recurso peticionado.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones